UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES MARKEL, )
)
    Plaintiff, )
)
v. ) Civil Case No. 22-1389 (RJL)
)
CARLOS DEL TORO, Secretary )
of the Navy, et al., )
)
    Defendants. )

## MEMORANDUM OPINION

January 27th, 2025 [Dkt. #22, Dkt. #24]

Plaintiff James Markel ("plaintiff" or "Markel") brings this action against defendants Carlos Del Toro, Secretary of the Navy; the U.S. Department of the Navy; and the Board for Correction of Naval Records ("BCNR" or "Board") (collectively, "defendants") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* Plaintiff, a former Naval officer, seeks to set aside the BCNR's denial of his request to correct his military records. Specifically, plaintiff believes he should have been "medically retired," a type of separation from military service which would entitle him to numerous benefits.

Now before the Court are the parties' cross-motions for summary judgment. *See* Pl.'s Mot. for J. on the Admin. R. ("Pl.'s Mot.") [Dkt. #22]; Defs.' Cross-Mot. for Summ. J. ("Defs.' Cross-Mot.") [Dkt. #24]. Upon consideration of the parties' briefing, the relevant law, and the entire record in this case, both motions will be **GRANTED IN PART**

1

and **DENIED IN PART**, and the case will be **REMANDED** to the BCNR for further proceedings.

## I.   BACKGROUND

### A.   Statutory and Regulatory Background

A service member can be medically retired from military service if he or she is "unfit" for service because of a disability. 10 U.S.C. § 1201(a). Medical retirement entitles the service member to certain benefits, such as access to military bases, healthcare benefits, and commissary privileges. The Navy evaluates service members' fitness through a multi-step process.

*First*, a commanding officer or medical or dental officer refers a service member for evaluation by the Medical Evaluation Board ("MEB"). Navy Sec'y Instr. (hereinafter, "SECNAVINST") 1850.4E (Dep't Disability Evaluation Manual) §§ 3102, 3106. If the MEB determines further evaluation is warranted, it refers the service member to a Physical Evaluation Board ("PEB"). *Id.* § 3201(a).

*Second*, the PEB determines whether the service member is "fit" or "unfit" to continue service. *Id.* § 1004(a). An unfit service member may be eligible for medical retirement. Here, a "[s]ervice member shall be considered unfit when the evidence establishes that the member, due to physical disability, is unable to reasonably perform the duties of his or her office, grade, rank, or rating . . . ." Dep't of Def. Instr. ("DoDI") 1332.38 § E3.P3.2; *see also* SECNAVINST 1850.4E § 3301. The PEB considers the following factors when deciding whether a service member can reasonably perform his or her duties:

2

<u>Common Military Tasks</u>.  The member, due to physical disability, is unable to reasonably perform the duties of his or her office, grade, rank, or rating. . . .

<u>Physical Fitness Test</u>.  Whether the member is medically prohibited from taking the respective Service's required physical fitness test. . . .

<u>Deployability</u>.  When a Service member's office, grade, rank or rating requires deployability, whether a member's medical condition(s) prevents positioning the member individually or as part of a unit with or without prior notification to a location outside the Continental United States . . . .

<u>Special Qualifications</u>.  For members whose medical condition causes loss of qualification for specialized duties, whether the specialized duties comprise the member's current duty assignment; or the member has an alternate branch or specialty; or whether reclassification or reassignment is feasible.

DoDI 1332.38 § E3.P3.4; *see also* SECNAVINST 1850.4E § 3304(a).

*Third*, if the service member disagrees with the PEB's finding and has been separated from the military, he can petition the BCNR for relief.  SECNAVINST 1850.4E §§ 3102(c), 5001(a).  The BCNR may revise a military record when necessary to correct an error or remove an injustice.  10 U.S.C. § 1552(a)(1); *see also* 32 C.F.R. § 723.3(e)(2).  If the BCNR denies a service member's application, its "determination shall be made in writing and include a brief statement of the grounds for denial."  32 C.F.R. § 723.3(e)(3).

B.   <u>Factual Background</u>

Plaintiff graduated from the U.S. Naval Academy in May 2006.  Admin. R. ("A.R.") [Dkt. #29] 15, 97.  He was commissioned as an Officer with the designator code 1160, which means "Unrestricted Line Officer who is in training for Surface Warfare qualification."  A.R. 175, 356.  He was flown out to his ship, the USS Forrest Sherman, which was deployed at the time.  A.R. 97.  Shortly after arriving on the ship, plaintiff

reported anxiety, difficulty breathing, rapid heartbeat, difficulty sleeping, and thoughts of running the ship aground and fighting his shipmates. A.R. 97–98. He was medically evacuated to a Naval Hospital in Rota, Spain, where he was diagnosed with Bipolar I Disorder. A.R. 83–84. Plaintiff was then flown back to the United States for outpatient psychiatric treatment at the Naval Medical Center ("NMC") in Portsmouth, Virginia. A.R. 97. NMC Portsmouth determined plaintiff was "not psychiatrically fit for full duty" and placed him on Limited Duty in an administrative role on shore. A.R. 95–96. He was also referred to a MEB. A.R. 95–96.

The MEB evaluated plaintiff and described his impairment as "moderate"; changed his diagnosis from Bipolar Disorder to Major Depressive Disorder, Recurrent with Psychotic Features; and referred him to a PEB. A.R. 97–100. In March 2008, an informal PEB found plaintiff "**FIT** to perform the duties of his/her office, grade, or rank on active duty." A.R. 436–38.

Nonetheless, a few months later, the Navy disqualified plaintiff from submarine duty, nuclear field duty, sea duty, and deployment. A.R. 110–13, 312–14. His Limited Duty service continued during this time and he earned glowing evaluations. *See* A.R. 119–20. Given his success in this administrative role, plaintiff requested to be redesignated as a Human Resources Officer. *See* A.R. 121. The Commander of Naval Surface Force Atlantic strongly recommended plaintiff for redesignation, describing him as "an exceptional Junior Officer" with "uncanny organizational, leadership, and deductive reasoning skills." A.R. 121. The Navy declined to redesignate plaintiff and honorably discharged him—but did not medically retire him—in March 2009. *See* A.R. 316–17.

4

C.   Procedural Background

In August 2015, plaintiff petitioned the BCNR to correct his military record to reflect a medical retirement. A.R. 283–86. The BCNR denied plaintiff's application in a two-page letter. A.R. 273–74, 278. Plaintiff then filed this lawsuit, seeking judicial review of the BCNR's decision under the APA. *See generally* Compl. [Dkt. #1]. The parties requested a joint remand back to the BCNR, which this Court granted in September 2022. Order (Sept. 26, 2022) [Dkt. #13]. The remand instructed the BCNR to re-adjudicate plaintiff's claim and "issue a new final decision explaining Plaintiff's entitlement to medical retirement pursuant to 10 U.S.C. § 1201, DoDI 1332.38, and other statutory and regulatory guidance." *Id.* at 1.

On remand, the BCNR again denied plaintiff's application in a 10-page letter. A.R. 1–11. The BCNR found that plaintiff's condition "was not so debilitating as to render [him] incapable of performing [his] duties" and thus the PEB did not err in finding plaintiff fit. A.R. 3–4. In reaching its conclusion, the BCNR highlighted plaintiff's exemplary performance while on Limited Duty. A.R. 3–4. Plaintiff then filed an amended complaint challenging that second BCNR decision, Am. Compl. [Dkt. #17], and moved for judgment on the administrative record, Pl.'s Mot. Defendant filed a cross-motion for summary judgment. Defs.' Cross-Mot. These motions are fully briefed and ripe for review.

II.   **LEGAL STANDARD**

A final decision of the BCNR is subject to judicial review under the APA. 5 U.S.C. § 706; *see Dickson v. Secretary of Defense*, 68 F.3d 1396, 1402 (D.C. Cir. 1995) (explaining "that when a Board reviews the merits of a former servicemember's application

5

under § 1552(a)(1), the decision is subject to judicial review" (citing *Chappell v. Wallace*, 462 U.S. 296, 303 (1983))). The Court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). The scope of review is narrow, as this Court "review[s] a decision of a military corrections board under an 'unusually deferential application of the "arbitrary and capricious" standard.'" *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)). The Court should "limit [its] inquiry to whether the 'Secretary's decision making process was deficient, not whether his decision was correct.'" *Id.* (quoting *Kreis*, 866 F.2d at 1511).

Still, this Court's review is not a rubber stamp. The Court "retain[s] a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). "[T]he court must be satisfied that the agency has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Iaccarino v. Duke*, 327 F. Supp. 3d 163, 173 (D.D.C. 2018) (alterations in original) (quoting *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006)).

### III.   ANALYSIS

Plaintiff's amended complaint asserts three claims for relief, each of which posits that the BCNR's decision violates the APA. *See* Am. Compl. ¶¶ 66–76. Addressing each

6

claim in turn, I find that summary judgment is warranted for plaintiff on the first and third claims for relief and for defendants on the second claim for relief.

A.   Plaintiff's First Claim for Relief

First, plaintiff claims that the BCNR's decision was arbitrary and capricious because it failed to evaluate all relevant criteria for a service member's fitness under binding statutes and regulations. Am. Compl. ¶¶ 66–70 (First Claim for Relief). The relevant criteria in determining fitness are: (1) the service member's ability to reasonably perform the common military tasks associated with his office, grade, rank, or rating; (2) the service member's ability to pass required physical tests; (3) the service member's deployability; and (4) whether the disability caused the service member to lose qualifications or specialized duties. DoDI 1332.38 § E3.P3.4.1; SECNAVINST 1850.4E § 3304(a). I find the BCNR's findings regarding the first factor[1] arbitrary and capricious and therefore grant summary judgment for plaintiff on his first claim for relief.

---

[1] Factors two and three are undisputed; factor four is disputed. With respect to factor two, the BCNR found that "the deployability factor weighed in favor of a finding [] that you were not reasonably able to perform your duties due to your MDD condition." A.R. 6. The parties do not contest this determination. *See* Pl.'s Mot. 26; Defs.' Cross-Mot. 19. Regarding factor three, plaintiff did not assert before the BCNR or in briefing that he is unable to pass the physical fitness test or that any BCNR findings regarding this factor are arbitrary and capricious. *See* A.R. 6 n.6; Pl.'s Mot. 26. Factor four, however, is disputed. Here, I find the BCNR's decision was not arbitrary or capricious. Plaintiff was disqualified from submarine and nuclear field duty because of his medical condition, *see* A.R. 110, 113, 312, but the BCNR did not view this as persuasive evidence of his unfitness in part because redesignation to another specialty was feasible, A.R. 8; *see* DoDI 1332.38 § E3.P3.4.1.4 (instructing the PEB to consider "whether reclassification or reassignment is feasible"). Plaintiff sought redesignation as a Human Resources Officer, but the Navy ultimately declined to redesignate him and instead separated him. The record does not indicate why the Navy made this decision. Plaintiff suggests that redesignation must have been infeasible because the Navy in fact did not redesignate him, but that logical leap assumes the Navy's reasoning without support in the record. The BCNR provided a sound justification—the strong endorsement from the Commander of Naval Surface Force Atlantic, *see* A.R. 121—to support its conclusion that redesignation was feasible, and plaintiff failed to provide countervailing evidence. Therefore, the BCNR's decision on factor four was not arbitrary or capricious.

The first factor—plaintiff's ability to perform his common military tasks—requires establishing (1) plaintiff's rating[2]; (2) the common military tasks associated with that rating; and (3) plaintiff's ability to reasonably perform those common military tasks. The BCNR's findings with respect to the third prong are arbitrary and capricious.

### 1.   Plaintiff's Rating

The BCNR determined plaintiff's rating was Unrestricted Line Officer, a "generalist[]" rating "assigned to perform a wide variety of tasks." A.R. 7. Plaintiff counters that his rating should be his designator code 1160, a narrower classification which means Unrestricted Line Officer *in training for Surface Warfare qualification*. Pl.'s Mot. 16–20. The BCNR's determination here was not arbitrary or capricious. Contrary to plaintiff's assertion, *see* Pl.'s Mot. 20, the BCNR did not ignore plaintiff's designator code and instead explained why it did not consider that code determinative, *see* A.R. 7. The BCNR stated that the Navy defines "ratings" as "occupational fields," and reasoned that being "*in training for* Surface Warfare qualification" was not an occupational field. A.R. 7 (emphasis added); *see* SECNAVINST 1850.4E § 2057 (defining rating as "[t]he occupational fields prescribed for Sailors . . . . Does not include secondary specialties"). Plaintiff cites no persuasive authority for the assertion that his designator code is his rating[3]

---

[2] The parties' dispute centers around plaintiff's rating rather than his office, grade, or rank. The heart of plaintiff's argument is that the BCNR should have evaluated his ability to complete the tasks associated with his designator code, which is, according to plaintiff, his rating. *See* Am. Compl. ¶ 17; A.R. 7; Pl.'s Mot. 2 n.1, 16–20.

[3] Plaintiff argues that "the Navy uses 'designator' codes to classify, identify, and document officer occupational field duties and qualifications." Pl.'s Mot. 2 n.1. However, plaintiff's cited source—an excerpt of the Manual of Navy Officer Manpower and Personnel Classifications, Vol. I—does not state that designator codes describe officers' occupational fields or ratings. *See* A.R. 175.

and, given the deference owed to the BCNR here, its decision was neither arbitrary nor capricious. *See Roberts*, 741 F.3d at 158.

### 2. Common Military Tasks Associated with Plaintiff's Rating

Finding no error with the BCNR's decision regarding plaintiff's rating, the next question is whether the BCNR's determination of that rating's common military tasks was arbitrary and capricious. Here again the BCNR's decision must stand.

According to the BCNR, the common military tasks associated with being an Unrestricted Line Officer are: "training and leading Sailors; learning and becoming proficient in the wide variety of technical tasks associated with service onboard service ships; thinking; planning; organizing; coordinating; and performing administrative functions." A.R. 7. This finding was not arbitrary or capricious. The BCNR reviewed examples of common military tasks provided in SECNAVINST 1850.4E § 3304(a)—such as "the need to fire a weapon, perform field duty, or wear load bearing equipment or protective gear"—and determined that common military tasks are akin to general, day-to-day tasks, not end goals or the achievement of certain qualifications, as plaintiff argues. *See* A.R. 6–7. Additionally, the BCNR's broad list of tasks aligns with the Navy's broad definition of Unrestricted Line Officer: "Officers of the line of the Regular Navy and Naval Reserve who are not restricted in the performance of duty." *See* A.R. 171. This is another area where the BCNR is owed significant deference, *see Roberts*, 741 F.3d at 158, and its findings here were neither arbitrary nor capricious.

### 3. Plaintiff's Ability to Perform His Common Military Tasks

The final question is whether the BCNR's determination that plaintiff could perform an Unrestricted Line Officer's common military tasks was arbitrary and capricious. This is where the BCNR's decision fails.

The BCNR included as common military tasks "the wide variety of technical tasks *associated with service onboard service ships*" and explained that Unrestricted Line Officers "are assigned to perform a wide variety of tasks, *both at sea and on shore*." A.R. 7 (emphases added). Plaintiff's condition prevented him from returning to service at sea, as the BCNR acknowledged. A.R. 7 ("You proved that the circumstance of your condition prevented you from returning to sea to obtain SWO qualification . . . ."); Defs.' Cross-Mot. 19 ("[T]he Correction Board recognized that Plaintiff was 'not medically cleared to return to sea duty or for worldwide assignment before [his] discharge.'").[4]

The BCNR offers a perplexing explanation for why plaintiff's medical disqualification from serving at sea does not establish his inability to perform tasks at sea: "There is a distinct difference between medical advice not to engage in certain activities and an inability to do so." A.R. 6–7. Hogwash. Plaintiff was disqualified from returning

---

[4] Defendants argue that plaintiff's inability to serve at sea cannot be the sole basis for finding plaintiff unfit. Defs.' Cross-Mot. 19. Defendants point to SECNAVINST 1850.4E § 3304(a)(3), which states that the inability to serve "in every geographic location and under every conceivable circumstance will not be the sole basis for a finding of Unfit." However, this provision speaks to fitness factor three, deployability, not factor one, common military tasks. *Compare* § 3304(a)(3) ("Deployability") *with* § 3304(a)(1) ("Common Military Tasks"). Defendants argue that allowing deployability to be determinative of whether plaintiff can perform common military tasks nullifies § 3304(a)(3)'s prohibition on treating the deployability factor as the sole basis for finding a service member unfit. Defs.' Cross-Mot. 19. This argument is unpersuasive. Common military tasks and deployability are separate factors, and there is no bar to considering a service member's ability to serve at sea as a common military task. Moreover, the ability to serve at sea is not a common military factor in every case, and allowing its consideration here does not nullify § 3304(a)(3).

10

to sea, not just advised against doing so. Specifically, a Medical Assignment Screening found plaintiff could not return to sea duty because of his mental state, and there is ample evidence supporting that finding. A.R. 112; *see also* A.R. 83–84 (explaining that before plaintiff was removed from the ship, "he would have thoughts of running the ship around [sic] or punching someone in the ear"); A.R. 98–100 (stating that while on bridge watch, plaintiff "would have thoughts of running the ship aground" and "fighting with shipmates and even striking his captain"). The Navy never returned plaintiff to sea duty and instead separated him. A.R. 316. There is no support in the record for the BCNR's assumption that plaintiff could have eventually returned to sea duty and thus could perform his common military tasks at sea.

Given its determination that several of plaintiff's common military tasks are "associated with service onboard service ships" and its acknowledgment that plaintiff could not return to sea duty, the BCNR's conclusion that plaintiff could perform his common military tasks is self-contradictory. Such illogical decisions are not rationally connected to the facts and are thus arbitrary and capricious. *See Constellation Mystic Power, LLC v. FERC*, 45 F.4th 1028, 1055 (D.C. Cir. 2022) ("[W]hen an agency 'fail[s] to provide an intelligible explanation' for its decision, it 'has fail[ed] to engage in reasoned decisionmaking' and we remand for further explanation. An order with apparent contradictions as to a dispositive issue is not reasoned decisionmaking and requires further clarification." (citation omitted)); *see also Iaccarino*, 327 F. Supp. 3d at 177.[5]

---

[5] The parties devote much of their briefing to whether the BCNR properly considered plaintiff's performance of administrative tasks while on Limited Duty. As explained above, I do not find the BCNR's

11

B.  Plaintiff's Second Claim for Relief

Second, plaintiff claims the BCNR's decision was arbitrary and capricious because the BCNR improperly asserted that it need not determine plaintiff's fitness and refused to identify the duties of plaintiff's office, grade, rank, or rating. Am. Compl. ¶¶ 71–73 (Second Claim for Relief). I disagree and therefore grant summary judgment for defendants on plaintiff's second claim for relief.

The BCNR stated its "statutory and regulatory function . . . is to correct errors in, and remove injustices from, naval records. This Board is not the PEB and does not make medical fitness determinations." A.R. 2. Plaintiff vehemently disagrees: "the Board was *required* to determine [plaintiff's] fitness." Pl.'s Reply 1. Plaintiff misunderstands the BCNR's statements. The BCNR was clarifying that the question before it was not whether plaintiff was unable to reasonably perform his duties; instead, it was tasked with determining whether the PEB erred in finding plaintiff medically fit or whether plaintiff's separation without medical retirement constitutes an injustice warranting relief. A.R. 2. The BCNR further explained that "[t]he burden to prove either of these bases for relief is on [plaintiff], presumably by establishing that [he was] incapable of reasonably performing the duties of [his] office, grade, rank, or rating." A.R. 2. The BCNR was simply setting out the standard of review and plaintiff's burden. *See* A.R. 2.

---

determinations of plaintiff's rating and common military tasks arbitrary or capricious. *See supra* Section III.A.1–2. Therefore, the BCNR's consideration of plaintiff's performance of administrative tasks while on Limited Duty is not improper. Error lies elsewhere in the BCNR's decision.

Moreover, the BCNR did not "refuse[] to identify the duties of [plaintiff's] office, grade, rank, or rating." *See* Am. Compl. ¶ 72. The BCNR identified a list of common duties associated with being an Unrestricted Line Officer. A.R. 7. Plaintiff disputes whether those are the *correct* rating and duties, but the BCNR did identify them and its findings on those points were not arbitrary or capricious. *See supra* Section III.A.1–2. Therefore, I find the BCNR's decision was neither arbitrary nor capricious here.

C. <u>Plaintiff's Third Claim for Relief</u>

Third, plaintiff claims the BCNR's decision was unsupported by substantial evidence. Am. Compl. ¶¶ 74–76 (Third Claim for Relief) (citing 5 U.S.C. § 706(2)(E) (instructing courts to set aside agency action "unsupported by substantial evidence")). I agree and therefore grant summary judgment for plaintiff on his third claim for relief.

For the reasons discussed above regarding plaintiff's first claim for relief, the BCNR failed to adequately grapple with evidence of plaintiff's inability to perform his common military tasks associated with service at sea. *See supra* Section III.A.3. The BCNR's decision is therefore not supported by substantial evidence. *See Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018) ("[E]vidence that is substantial viewed in isolation may become insubstantial when contradictory evidence is taken into account. Therefore, an agency cannot ignore evidence that undercuts its judgment; and it may not minimize such evidence without adequate explanation." (alteration in original) (citation omitted) (quoting *Landry v. Fed. Deposit Ins. Corp.*, 204 F.3d 1125, 1140 (D.C. Cir. 2000))).

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**; defendants' cross-motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**; and this case is **REMANDED** to the BCNR for further proceedings. A separate Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge